

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BAY CITIES RECOVERY, INC. D/B/A DIGITALDOG AUTO RECOVERY, | § § § | |
| Plaintiff/Counter-Defendant, | § § | |
| VS. | § § | NO. 4:18-CV-280-A |
| DIGITAL RECOGNITION NETWORK, INC., | § § § § | |
| Defendant/Counter-Plaintiff, and Third-Party Plaintiff, | § § § | |
| VS. | § § | |
| LOCATION SERVICES, LLC, | § § | |
| Third-Party Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Came on for consideration the motions of plaintiff, Bay Cities Recovery, Inc. d/b/a DigitalDog Auto Recovery, and third-party defendant, Location Services, LLC, for summary judgment, and the motion of defendant, Digital Recognition Network, Inc., for partial summary judgment. The court, having considered the motions, the responses, the replies, the record, and applicable authorities, finds that the motions of plaintiff and third-party defendant should be denied and that defendant's motion should be granted.

I.

## Claims Asserted

Plaintiff's operative pleading is its amended complaint filed April 13, 2018. Doc.[1] 7. In it, plaintiff alleges:

Plaintiff is a California repossession agency that recovers vehicles from consumers who default on their automobile loans. Doc. 7 ¶ 1. Since approximately 2010, plaintiff has used license plate recognition ("LPR") technology made available by defendant to help locate vehicles subject to repossession throughout the State of California. Id. ¶ 3. In March 2014, plaintiff signed a license agreement with defendant (the "Agreement"), which contained a one-year non-competition provision (the "Provision"). Id. ¶ 4; Doc. 9, Ex. A. On April 11, 2018, plaintiff sent written notice to defendant that it was terminating the Agreement, effective May 11, 2018. Doc. 7 ¶ 6. Plaintiff intends to work with third-party defendant using different LPR technology to conduct its business. Id. ¶ 7.

Plaintiff seeks a declaratory judgment that the Provision is unenforceable. Plaintiff also asserts a cause of action for unfair competition under California law.

On May 9, 2018, defendant filed its first amended counterclaim against plaintiff and third-party defendant.

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

Defendant asserts a cause of action against plaintiff for breach of contract based on plaintiff's alleged breach of the Provision. Defendant asserts a cause of action against third-party defendant for tortious interference with contract for allegedly inducing plaintiff to breach the Agreement. Doc. 18.

II.

Grounds of the Motions

Plaintiff seeks judgment on both of its causes of action. It also seeks judgment that defendant take nothing on its counterclaim. Doc. 51.

Third-party defendant seeks judgment that defendant take nothing on its counterclaim (which is really a third-party claim) against it for tortious interference with contract. Doc. 60.

Defendant seeks judgment that plaintiff take nothing on its causes of action for declaratory judgment and unfair competition. It also seeks judgment on its counterclaim against plaintiff as to liability for breach of contract and against third-party defendant as to liability for tortious interference. Doc. 56.

III.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense if there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). In Mississippi Prot. & Advocacy Sys., Inc. v. Cotten, the Fifth Circuit explained:

4

Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597; see also Mississippi Prot. & Advocacy Sys., 929 F.2d at 1058.

IV.

Analysis

A. Enforceability of the Provision

With regard to non-competition, the Agreement provides:

11. Restrictions.
(a) Non-Competition. As an inducement for [defendant] to enter into this Agreement, [plaintiff] agrees that during the term of this Agreement and the Restrictive Period, neither [plaintiff] nor ... any Related Parties shall, directly or indirectly, engage or invest in, own, manage, operate, finance, control or participate in the ownership, management, operation, financing or control of, be employed by, associated with or in any manner connected with, or render services or advice or other aid to, or guarantee any obligation of, any person or entity engaged in or planning to become

---

[2] In Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

5

engaged in the business of using LPR technology and LPR
data for the purpose of recovering vehicles sought for
recovery within the financial, lending or insurance
industries or assisting in debt collection efforts on
behalf of municipalities and governmental entities.
[Defendant] and [plaintiff] agree that this covenant is
reasonable with respect to its duration and scope.

Doc. 9, Ex. A at 10. The "restrictive period" is a period of one year immediately following termination of the Agreement. Id. at 4.

A preliminary matter to be determined, and one that may be dispositive of the claims asserted, is whether the Provision is enforceable. And, that issue turns on which state's law is to be applied. Because this action is before the court on the basis of diversity of citizenship, the court applies the choice of law rules of Texas, the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Stuart v. Spademan, 772 F.2d 1185, 1195 (5th Cir. 1985).

Texas recognizes the "party autonomy rule" whereby parties to a contract can agree to be governed by the law of another state. Exxon Mobil Corp. v. Drennen, 452 S.W.3d 319, 324 (Tex. 2014). In that regard, it applies the Restatement (Second) of Conflict of Laws ("Restatement") § 187, which provides in pertinent part:

> (2) The law of the state chosen by the parties to govern
> their contractual rights and duties will be applied, even
> if the particular issue is one which the parties could
> not have resolved by an explicit provision in their
> agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of applicable law in the absence of an effective choice of law by the parties.

Although "substantial relationship" is not defined, Texas holds the parties to their choice when the state of the chosen law has a sufficiently close relationship to the parties and the contract as to make the parties' choice reasonable. Exxon Mobil, 452 S.W.3d at 325. This supports the rationale of § 187 that "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities." Id. at 330 (quoting Restatement § 187 cmt. e). "Uniformity is a frequent goal of contracting . . . and parties should be able to achieve that goal by choosing the applicable law." Id.

In this case, the parties to the Agreement chose to apply Texas law. The Agreement provides:

> (b) Governing Law ...This Agreement will be governed by and construed under the laws of the State of Texas without regard to conflicts-of-laws principles that would require the application of any other law. ...

7

Doc. 9 at 16 ¶ 17(b). Texas courts regularly enforce choice of law provisions unless the chosen law has no substantial relationship with the parties or unless there is a state with a materially greater interest in the dispute and applying the chosen law would be against the fundamental policy of the state with such materially greater interest. Blue Racer Midstream, LLC v. Kelchner, Inc., No. 3:16-CV-3296-K, 2018 WL 993781, at *4 (N.D. Tex. Feb. 21, 2018). Thus, the burden is on plaintiff and third-party defendant to show that the Provision upon which the parties agreed should not be enforced.

Here, Texas has a substantial relationship to the parties, because defendant is a Texas citizen, having its principal place of business here. Doc. 7 ¶ 11. Blue Racer, 2018 WL 993781, at *4; Gator Apple, LLC v. Apple Tex. Rests., Inc., 442 S.W.3d 521, 533 (Tex. App.--Dallas 2014, pet. denied). And, Texas has a strong interest in enforcing its residents' contracts. TransPerfect Translations, Inc. v. Leslie, 594 F. Supp. 2d 742, 751 (S.D. Tex. 2009). In fact, enforcing non-competition agreements falls within Texas' fundamental policy. McKissock, LLC v. Martin, 267 F. Supp. 3d 841, 851 (W.D. Tex. 2016).

Because the requirements of § 187(2)(a) are met, the court considers the § 187(2)(b) factors to determine whether the parties' choice of Texas law is enforceable. Exxon Mobil, 452

S.W.3d at 325. This is a three-part test in which the court first determines which state has the most significant relationship with the parties and their transaction. If that state is Texas, the court need not go further and the Texas choice of law provision will apply. If that state is California, then the court must determine whether California's interest is materially greater than that of Texas. And, finally, if California's interest is materially greater than that of Texas, the court determines whether application of Texas law would be contrary to a fundamental policy of California. Id. at 326-27.

The most significant relationship determination is made by examining which state's law would apply under the rule of § 188 of the Restatement in the absence of an effective choice of law provision. Restatement § 187(2)(b). Section 188, in turn, refers to the principles of § 6 of the Restatement and says that the contacts to be taken into account in applying the principles of § 6 are (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Thus, the court starts with the contacts and then evaluates them in light of the principles

enumerated in § 6 of the Restatement.[3] Chesapeake Operating, Inc. v. Nabors Drilling USA, Inc., 94 S.W.3d 163, 170-77 (Tex. App.--Houston [14th Dist.] 2002, no pet.). See also CMA-CGM (America), Inc. v. Empire Truck Lines, Inc., 416 S.W.3d 495, 511-13 (Tex. App.--Houston [1st Dist.] 2013, pet. denied); Panatrol Corp. v. Emerson Elec. Co., 163 S.W.3d 183 (Tex. App.--San Antonio 2005, pet. denied)(applying the same analysis).

The place of performance of the Agreement lies in California and Texas. The bulk of plaintiff's work in scanning license plates is in California, but the information obtained thereby is transmitted to defendant in Texas at its secure facility, where information is compiled and analyzed before being disseminated. The scanning is accomplished by plaintiff's use of equipment it was required to purchase from defendant.[4] It is the analysis of the information that makes it valuable. The subject matter of the Agreement is a license to use certain computer software maintained in Texas in connection with certain computer hardware. The place of negotiation of the Agreement is of less importance

---

[3]The parties have only undertaken half of the analysis, looking solely at the contacts listed in Restatement § 188(2). The court recognizes that the Fifth Circuit has indicated that a complete analysis may not be necessary, Cardoni v. Prosperity Bank, 805 F.3d 573, 582-83 n.9 (5th Cir. 2015), but notes that the Texas Supreme Court did identify the principles of Restatement § 6 as being part of the test. DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 678-79 & n.2 (Tex. 1990). The court is not aware of any authority preventing a complete analysis.

[4]The fortuity that the equipment may have been shipped from California should not weigh as a factor in favor of that state's contacts.

10

since the bulk of it appears to have been done by email. See Restatement § 188, cmt. e. Defendant's address for notices under the Agreement is Fort Worth, Texas. The Agreement became effective upon delivery of a signed counterpart of the signature page to defendant. As stated, plaintiff is a California corporation, incorporated and having its principal place of business there. Defendant is incorporated in Delaware and has its principal place of business in Texas. The balance of these factors shows that Texas has the most significant relationship with the Agreement, even without considering the Restatement § 6 factors. If the § 6 factors were to be considered, the court would reach the same conclusion.[5]

Even had there been a question of which state has the most significant relationship, the evidence does not show that California has a materially greater interest in the subject matter of the Agreement than does Texas. In this regard, plaintiff focuses on the fates of its employees, as though they had individually entered into contracts with defendant, and how unfair and against California policy it would be to enforce non-

---

[5]In particular, Texas has an interest in enforcing the contracts between its citizens and others, especially where part of the performance occurs here. The protection of justified expectations is achieved by application of Texas law, which is the law the parties agreed would apply. Certainty, predictability, and uniformity of result are best achieved by application of Texas law. And, the law of the forum is more easily determined.

compete agreements against them.[6] The fact is that the Agreement is between two corporations and plaintiff's work in California is but one part of an interstate system built on use of LPR technology. The nerve center of that system is in Texas. As plaintiff itself has shown, defendant is "not a repo company . . . not a forwarder . . . [but] a data company." Doc. 62 at 198.

Finally, the court notes that it is not persuaded that enforcement of the Provision would violate a fundamental policy of California in this context.[7] But, this is an issue the court need not reach.

The court next considers the enforceability of the Provision under Texas law. The pertinent statute provides:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Tex. Bus. & Com. Code § 15.50(a) (West 2011). The court determines the enforceability of covenants not to compete as a

---

[6]The implication that plaintiff's 84 employees will be harmed by enforcement of the provision is belied by plaintiff's admission that approximately 90% of its vehicle recoveries come from methods other than use of LPR technology. Doc. 52 at 6.

[7]The cases cited by the parties appear to concern only the "employment agreement context." See, e.g., Scott v. Snelling & Snelling, Inc., 732 F. Supp. 1034, 1042 (N.D. Cal. 1990); Pollara v Radiant Logistics, Inc., No. CV 12-344GAF(JEMx), 2014 WL 12585781, at *1 (C.D. Cal. June 6, 2014)(California public policy protects the rights of individuals to practice their profession or trade).

12

matter of law. <u>Merritt Hawkins & Assocs., LLC v. Gresham</u>, 79 F. Supp. 3d 625, 639 (N.D. Tex. 2015), <u>aff'd</u>, 861 F.3d 143 (5th Cir. 2017); <u>DeSantis</u>, 793 S.W.2d at 682.

Here, the Provision is part of an otherwise enforceable agreement between plaintiff and defendant. That the provision includes the representation and agreement of the parties that it is "reasonable with respect to its duration and scope" is a factor to be taken into account in assessing its enforceability. <u>Poole v. U.S. Money Reserve, Inc.</u>, No. 09-08-137CV, 2008 WL 4735602, at *8 (Tex. App.--Beaumont Oct. 30, 2008, no pet.). The doctrine of equitable estoppel prevents a party from accepting benefits of a transaction and later taking an inconsistent position to avoid corresponding obligations or effects. <u>Lozano v. Ocwen Fed. Bank, FSB</u>, 489 F.3d 636, 640 (5th Cir. 2007). Plaintiff received the benefit of entering into the Agreement, receiving a greater revenue share than under the earlier contract with defendant. Further, plaintiff clearly understood the that it would be limited from competing for one year, as it sought unsuccessfully to eliminate the Provision from the new Agreement. <u>See, e.g.</u>, Doc. 62 at APP 200; Doc. 85 at APP 697. Plaintiff should be bound by its agreement.

The court is satisfied that a restrictive period of one year is reasonable. Courts routinely uphold noncompetition agreements


of more than one year. See, e.g., Merritt Hawkins, 79 F. Supp. 3d at 640; Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644 (Tex. 2006). Defendant's business is nationwide[8]; hence the lack of geographical scope in the Provision is not unreasonable. Vais Arms, Inc. v. Vais, 383 F.3d 287, 296 n. 20 (5th Cir. 2004); McKissock, LLC v. Martin, 267 F. Supp. 3d 841, 856-57 (W.D. Tex. 2016). And, the scope of the Provision is limited to "the business of using LPR technology and LPR data for the purpose of recovering vehicles sought for recovery." Doc. 9, Ex. A at 10. According to plaintiff, over ninety percent of its repossessions are made without using LPR technology. Doc. 75 at 427-29; Doc. 52 at 6. And, since termination of the Agreement, plaintiff is recovering more vehicles than it did in 2017. Doc. 75 at 434-36.

B. Plaintiff's Claims

For the reasons discussed, supra, plaintiff is not entitled to a declaration that the Provision is unenforceable. And, because the plaintiff and defendant agreed that Texas law would govern their Agreement, California unfair competition law does not apply.

---

[8]So is the business of third-party defendant, Doc. 92 at 207-08, with which plaintiff is "laying the groundwork to a game-changing business model," Doc. 75 at 276, that is, a "new LPR program." Id. at 274.

14

C. Defendant's Claims

The elements of a breach of contract claim in Texas are: (1) existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. Mullins v. TestAmerica, Inc., 564 F.3d 386, 418 (5th Cir. 2009). Defendant has shown that plaintiff breached the Agreement through its interactions with third-party defendant both prior to termination of the Agreement and after. Plaintiff does not dispute that it engaged in the conduct described. Rather, it says that it was "engaged in legitimate business negotiations." Doc. 83 at 35. However, the evidence is to the contrary. See Doc. 91 at 15-23.

The elements of a claim for tortious interference are: (1) a contract subject to interference exists, (2) the act of interference was willful and intentional, (3) the intentional act proximately caused damage, and (4) actual damage or loss occurred. Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000); Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 664 (Tex. 1990). Again, defendant has shown that third-party defendant willfully and intentionally interfered with the Agreement between plaintiff and defendant. Clearly, third-party defendant was aware of the terms

15

of the Agreement as plaintiff insisted upon an indemnification agreement before it would proceed with communications it knew would violate the Agreement. See, e.g., Doc. 74 at App. 006, App. 080, App. 217; Doc. 75 at App. 449, App. 563.

V.

Order

The court ORDERS that the motions of plaintiff and third-party defendant for summary judgment be, and are hereby, denied.

The court further ORDERS that defendant's motion for partial summary judgment be, and is hereby, granted, and plaintiff's liability for breach of contract by reason of its dealings with third-party defendant be, and is hereby, established, and third-party defendant's liability for tortious interference by knowingly and intentionally participating with plaintiff to violate the Agreement be, and is hereby, established.

SIGNED October 5, 2018.

_____
JOHN McBRYDE
United States District Judge